## BROOKS *v.* THACHER.

### *Practice.    Principal and Surety.*

The court will not direct a verdict against a party for whom there is any evidence.

In assumpsit upon promissory notes that defendant had indorsed, the question was whether defendant was a principal or a surety. The court charged that if it was agreed between the parties that he was to sign in the character of a surety, plaintiff could not recover, but that if it was agreed that he should sign as principal, then plaintiff could recover. There was no agreement between the parties relative thereto, and little or nothing said about it. *Held*, that the charge should have taken into account the nature and character of the transaction, and the relation of the several parties to it and to each other, and their respective interest in and knowledge of it, and was therefore erroneous.

ASSUMPSIT upon two promissory notes. The plea alleged that W. K. and G. A. Richardson were principals on said notes, and that defendant was a mere surety, as plaintiff well knew; that said Richardsons and their creditors, of whom plaintiff was one, mutually agreed upon a compromise of all debts and demands against said Richardsons, by which said Richardsons were to pay ten per cent. of all of said debts and demands, and were thereupon to have a full discharge therefrom; that in pusuance of said agreement, said Richardsons afterwards paid plaintiff ten per cent. of the entire demand on which defendant was surety; and that in consideration thereof, plaintiff executed and delivered to said Richardsons a writing, signed by him and all other creditors of said Richardsons, fully discharging all their debts and demands, including the debt or demand sought to be recovered in this action.

The plea was traversed, and the case tried by jury at the May Term, 1876, BARRETT, J., presiding, and verdict for plaintiff.

The notes, which plaintiff introduced in evidence, were for $237 at sixty days date, and for $150 at seventy-five days date, respectively, payable to plaintiff or bearer, at the National Bank of Lebanon, N. H., signed by the Richardsons, and indorsed by plaintiff and defendant, and bore date October 20, 1874.

Plaintiff testified in his own behalf, and his testimony, which, together with all other testimony in the case, was made a part of the exceptions, tended to show that on the morning of the day of the date of the notes, one of the Richardsons, with one John Mc- Carty, who was then going about with him, and appeared to be assisting him in purchasing cattle, came to plaintiff's house in Sharon and traded for two yoke of oxen at a certain price per pound, McCarty doing the talking in presence of Richardson, with the understanding that plaintiff should take notes such as were afterwards drawn and are here in suit, signed by the Richardsons and indorsed by defendant, in payment therefor, it being also understood that defendant was then in Quechee, and would com- plete the notes by indorsing them upon their being taken there to him, and that plaintiff should not accept the notes till defendant had indorsed them ; that they accordingly went to West Hartford, where the oxen were weighed, and, at about 9 o'clock, to the hotel in that place, where the notes were drawn by McCarty, signed by Richardson, and left on the table for plaintiff, who then said that it was necessary to have defendant's name on them, to which McCarty replied, Richardson being present, that if plaintiff would take them to Quechee, defendant would complete them; that plaintiff thereupon took the notes and started for Quechee, accompanied by McCarty, and accompanied or shortly preceded by Richardson and his men with the oxen and other cattle ; that they reached Quechee at about noon, and that plaintiff soon after- wards casually asked defendant if the Richardsons had arranged with him to indorse the notes, to which defendant replied that they had said nothing to him about it; that he then spoke to Richardson and McCarty, suggesting that they get defendant's name on the notes, as they had agreed to do, so that he could go away about other business ; that Richardson then said that was McCarty's trade, or something to that effect, but that they con- ferred with defendant a little apart from plaintiff, so that he did not hear what was said, after which defendant came along to plaintiff, and said that Richardson had requested him to indorse the notes, and that he would do so, if they would go into the house near where they were, and that they went into the house,

and defendant indorsed the notes, and plaintiff accepted them as payment and went home ; and that the oxen were driven away on that same day to Manchester, N. H., where the Richardsons were engaged in business. Plaintiff's testimony further tended to show, that at one time when defendant came to him to get his power of attorney to vote at the meeting of the Richardsons' creditors, at which the alleged compromise agreement, which was conceded, was made, defendant acknowledged his liability, and said the proposed arrangement would relieve him only so far as the Richardsons paid ; that defendant paid the alleged per cent. for the Richardsons, of which plaintiff's portion was $40, and that when he paid it, and when plaintiff executed the discharge, which was also conceded, defendant again acknowledged his liability, and said that he intended to pay the notes ; that some time in November or December of the fall before this trial, plaintiff went to defendant's house and got two barrels of apples, telling defendant that he would take them at his price, and indorse them on the notes, to which defendant agreed ; and that on the very day of trial he had a conversation with defendant, in which defendant acknowledged plaintiff's claim, but wanted the suit, of which he pretended to know but little, " put over " until a suit brought against him by Paddleford could be decided.

Plaintiff introduced in evidence the deposition of McCarty, which tended to show that when he and Richardson went to look at the oxen, Richardson, after talking with plaintiff about a price, took McCarty aside and asked him if plaintiff would wait on them ; that the oxen were sold with the understanding that plaintiff should take notes with defendant's indorsement, and that he understood that the sale and delivery of the oxen were to be completed at Quechee, where defendant then was, by defendant's indorsing the notes ; that after they arrived at Quechee, he told defendant that plaintiff would not let Richardson have the oxen unless defendant indorsed the notes, to which defendant replied, that he supposed he would have to indorse them, and that defendant's indorsement was made upon the express condition that plaintiff should accept the notes in payment for the cattle ; that at the time the oxen were bought he was carrying Richardson around a little to look

at cattle, and assisting him in buying; and that during the summer before this case was tried, he saw defendant and had conversation with him, when defendant asked him to take care of the notes, saying that he was the means of his having indorsed them. His testimony as to the trade and the making and indorsing of the notes, was, in other respects, substantially like the plaintiff's.

Defendant's testimony tended to show that he had no interest in the purchase of the oxen, and that he knew nothing about it till plaintiff asked him at Quechee on the day the oxen were bought, Richardson being present, and McCarty and others standing near, if he was willing to indorse Richardsons' paper, saying he had sold them some cattle and wanted he should indorse for them, and asking if he had not indorsed some for them; that defendant replied that Richardson had said nothing about it, and that he did not want to indorse for them that time.; that plaintiff then said Richardson had agreed that he should, which Richardson denied, whereupon a dispute arose between Richardson and plaintiff, in course of or after which McCarty took defendant aside and talked with him about signing, saying, among other things, that he did not believe plaintiff would let Richardson drive the oxen away unless defendant signed, to which defendant replied, that he had nothing to do with the trade, and did not design to have, that he had been signing their paper, and that they must fix it up themselves; that finally he consented to indorse the notes, which were in plaintiff's possession, and did indorse them, plaintiff only being present, after which plaintiff took them again; that he had no previous understanding of any kind with either Richardson or McCarty about signing the notes, and that they were at the place in Quechee where the notes were indorsed when he arrived; and that he indorsed one or two notes for the Richardsons before indorsing the notes in suit. Defendant's testimony tended further to show that he had never acknowledged his liability on the notes to plaintiff at any time, either at the time of the payment of the per cent. or upon the day of trial, as the plaintiff testified; and as to the apples, that plaintiff came to him and asked him if he would let him have some, saying that he would like them and would pay for them; that defendant told him he

might have some, whereupon they were put into plaintiff's wagon, defendant expecting plaintiff to pay for them, but that plaintiff drove off, saying that " he guessed he better apply them on the notes," to which defendant replied that he expected he would pay the money for them.

Upon that evidence, defendant requested the court to charge that it appeared that he was a mere surety, and that there was no testimony tending to show that he was a principal, and to order a verdict for him ; but the court refused, and charged as follows :

What was the transaction ? According to Brooks's account, and according to McCarty's account, the trade was, that the Richardsons were to have these oxen upon giving their note with Thacher's name to it. That was the trade according to Brooks's account and according to McCarty's account. * * * Well, he got the Richardsons' note with Thacher's name to it. * * Now the question is, in what character did Thacher put his name there ? was it as principal or as surety ? If you look at the note alone, and nothing outside of it, he is there as principal, and not as surety, just as much as if he had written his name right down under Richardsons ; he is there as principal. Now, if he is there in any other capacity, it must be because it was agreed between the parties that it was to be there in that other capacity: Now the question for you to settle upon the evidence is, was it agreed, was it understood between the parties, that he was to be there in the character of surety, and not as principal ? That is the question that is submitted to you in this branch of the case. If it was understood and agreed between the parties that he was to be there in the character of surety, then the plaintiff cannot recover in this case. If it was not understood that it was to be there as surety, but the understanding was that it was to be there as principal, then the plaintiff can recover.

To the refusal to charge as requested, and to the charge given, defendant excepted.

*W. C. French*, for defendant.

The only question is whether defendant is a surety. There is nothing in the case to make him a principal. The sale was fully completed, and the notes executed and delivered, before he had any knowledge of it. It was understood that he was to *indorse* the

notes, not *sign* them. The very term used implied that his undertaking was collateral. If it had been understood that he was a principal, he would have been required to sign the notes. Bouvier defines a surety as " a person who binds himself for the payment of a sum of money, or for the performance of something else, for another who is already bound for the same." Defendant comes directly within that definition. We were entitled to have a verdict directed in our favor as requested.

The charge of the court was wrong, as it submitted to the jury to find whether defendant signed the notes as principal or as surety. There was no evidence to justify such instructions.

It was error to instruct the jury that on the face of the notes, without evidence, defendant stood as a principal. As the notes were produced on trial, the names of both Brooks and Thacher appear as indorsers.

*S. E. Pingree*, for plaintiff.

The testimony tends to show that defendant signed the notes as principal, and that defendant always understood that his undertaking was that of a maker of the notes.

Under the testimony the court properly denied defendant's request, and left it to the jury to find, under the instructions shown, what the real obligation intended to be assumed was. *Sylvester*, *exr.* v. *Downer*, 20 Vt. 355 ; *Strong* v. *Riker*, 16 Vt. 554 ; *Dean* v. *Hull*, 17 Wend. 214.

The opinion of the court was delivered by

PIERPOINT, C. J. The only question litigated upon the trial of this case in the County Court was, whether the defendant Thacher executed the notes in suit to the plaintiff as a principal, or as a surety or guarantor for the Richardsons, the other parties to the notes. It is conceded that the plaintiff had discharged the Richardsons by a compromise agreement on the receipt of a part of the debt, as was held in *Paddleford* v. *Thacher*, 48 Vt. 574. It was also held in that case, that such a discharge of the principals operated as a discharge of a known surety. Hence the materiality of the question, Was the defendant a surety and known

63

to Brooks, the plaintiff, to be such at the time he discharged the Richardsons?

After the testimony in the case was all in at the trial below, the counsel for the defendant requested the court to direct a verdict for the defendant, on the ground that there was no evidence tending to show that the defendant signed the notes as principal. This, the court refused, and the defendant excepted. We think the County Court was right in this. The notes themselves furnish evidence that the defendant was a principal. His name appears upon the back of the notes, but it was placed there under circumstances that put him in the same position that he would have been in if he had put his name upon the face of the notes, according to repeated decisions in this state.

The defendant also excepted to a portion of the charge. The court in submitting the case to the jury say: " What was the transaction? According to Brooks's account and according to Mc-Carty's account, the trade was, that the Richardsons were to have these oxen upon giving their note with Thacher's name to it. That was the trade according to Brooks's account and according to McCarty's account. * * * Well, he got the Richardsons' note with Thacher's name to it. * * * Now, the question is, In what character did Thacher put his name there? Was it as principal, or as surety? If you look at the note alone, and nothing outside of it, he is there as principal, and not as surety, just as much as if he had written his name right down under Richardsons'—he is there as principal. Now, if he is there in any other capacity, it must be because it was agreed between the parties that he was to be there in that other capacity. Now, the question for you to settle upon the evidence is, Was it agreed—was it understood, between the parties that he was to be there in the character of surety, and not as principal. That is the question submitted to you in this branch of the case. If it was understood and agreed between the parties that he was to be there in the character of surety, then the plaintiff cannot recover in this case. If it was not understood that it was to be there as surety, but the understanding was that it was to be there as principal, then the plaintiff can recover."

This, we think, is putting the question on quite too narrow ground. The result is made to depend entirely on the question whether there was between the parties an understanding and agreement as to the position the defendant stood in. The nature and character of the transaction, and the relation of the several parties to it, and to each other, and their respective interest in it and knowledge of it as bearing upon the question, are entirely left out of consideration.

Ordinarily these circumstances determine the question whether a party whose name, with others, is attached to a note, is a principal or a surety, both as between himself and his co-signers, and himself and the payee.

In this case all the testimony that was put in at the trial below, was made a part of the exceptions and is now before this court. There is nothing in it tending to show that a word was said by any of the parties as to the character in which the defendant was to sign these notes, whether as principal or surety, unless it be the testimony of Brooks and McCarty, that the understanding was between Brooks and the Richardsons that, if Brooks gave time, they were to get Thacher's name on the notes. Thacher had no interest in nor connection with the transaction between Brooks and Richardson, nor any knowledge of it until he was asked to sign the notes, and had no other connection with the transaction afterwards.

If the testimony of Brooks, McCarty, and Thacher is to be believed, there can hardly be a question but that Thacher put his name upon the notes as surety for the Richardsons, and that Brooks had perfect knowledge of that relation ; and if so, Brooks was bound to regard that relation in dealing with the Richardsons. But if these facts are laid out of the case, and the question is made to turn upon an agreement between the parties that the defendant is to stand as a surety, the defense must of course fail, as nothing was said between the parties on the subject, and the case would stand upon the note alone, where the defendant is an apparent principal. As under the charge the jury had no alternative but must render a verdict for the plaintiff,

Judgment reversed, and case remanded.